UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES LEROY SKUNKCAP,<br><br>       Petitioner,<br><br> v.<br><br>STATE OF IDAHO ATTORNEY GENERAL LAWRENCE WASDEN,<br><br>       Respondent. | Case No. 1:14-cv-00545-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner James Leroy Skunkcap's Petition for Writ of Habeas Corpus, challenging his Bannock County convictions, in two separate cases, of grand theft and attempting to elude a police officer (among other charges not before the Court at this time). (Dkt. 3.) The Petition is now fully briefed.[1] (Dkt. 18, 21, 26.)

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 9.) Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary.

---

[1] The Court will grant Petitioner's Motion for Extension of Time (Dkt. 20), and Petitioner's reply (Dkt. 21) is deemed timely.

**MEMORANDUM DECISION AND ORDER - 1**

*See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief and dismissing this case with prejudice.

## BACKGROUND

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 10.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Petitioner does not challenge the Idaho Supreme Court's description of the underlying facts. Those facts are as follows:

> **November 13, 2006, crime.** On November 13, 2006, [a person later identified as Petitioner] stole two saddles from a horse trailer that the owner of a store had parked next to a warehouse that was located near the store. As one is facing the front of the store, the warehouse would be to the left of and behind the store, and the horse trailer was parked near the left side of the warehouse. At about 1:15 p.m., a store employee, who was feeling ill, left the store to drive home. She left by the front door and was walking to her pickup, which was parked to the left of the store. While doing so, she saw a light blue car parked beside the left side of the horse trailer. The front of the car and the front of the trailer were facing her. She could see that the trunk of the car was open and there was a man standing behind the car. After she got into her pickup, which she estimated to be sixty to seventy feet from the blue car, she could see that the man was struggling to put a saddle into the trunk of the car, and she saw that the back door of the trailer was open. She thought that if the man had purchased or pawned the saddle, it would be strange to park so far from the store's front door. She watched the man for about five minutes and wrote down the license number of the car. After he drove away, she headed home, but as she was doing so she telephoned the store and spoke to two employees to see if anyone had done any transaction with a saddle. She also suggested that the owner check his horse trailer.

**MEMORANDUM DECISION AND ORDER - 2**

It normally took the employee about thirty minutes to drive from the store to her home. Before she arrived at home, she received a telephone call from a police officer, and she told him the license number of the blue car. He ran a records check and drove to the residence of the owner of the license plates. The owner told him that a man she only knew as "Don" had taken the plates from her car some time earlier. Her car, a 1989 dark blue Toyota Camry, was in her garage and did not appear to the officer to be operable. The officer then returned to the police station and entered the stolen license plates in the National Crime Information Center data base. The following day, [Petitioner] was arrested driving a light blue 1990 Toyota Camry bearing the stolen license plates.

**November 14, 2006, crimes.** On November 14, 2006, a Pocatello police detective drove to a trailer park because he had been informed that [Petitioner] was there. The detective was driving a Ford Escape, which was rented by the police department and did not have any markings indicating it was a police vehicle. As the detective drove past the identified residence, he saw a blue car parked in front of it. He recorded the license number of the car and then parked within sight of it. He radioed dispatch and was advised that both the license plates on the car and the car may have been stolen. After watching the car for over an hour, he saw a male and female get into it and drive away. The detective followed the blue car as it left the trailer park.

Two sheriff's deputies had also responded to the area to assist the detective. Each of the deputies was driving a four-door pickup equipped with overhead lights and the words "Bannock County Sheriff" written on the front doors. They were parked along a paved road that ran east-west and were informed when the blue car was leaving the trailer park. The deputies saw the blue car pull onto the paved road and turn west towards them, but it was traveling in the eastbound lane. One of the deputies activated the overhead lights on his pickup and began driving toward the blue car. The car immediately made a u-turn and began heading east in the westbound lane. The other deputy did not activate his overhead lights, but also began driving toward the blue car. Upon seeing the approaching sheriff's vehicles, the detective

**MEMORANDUM DECISION AND ORDER - 3**

positioned his vehicle so that it was facing north blocking the westbound lane of traffic. He did so in order to stop any westbound traffic while leaving the eastbound lane open.

The blue car continued driving east in the westbound lane and struck the left front quarter panel of the detective's vehicle. The pickup with its overhead lights on pulled up next to the blue car and stopped, and the other pickup pulled in behind the car and stopped. The driver of the car turned around and looked at the deputy in the pickup behind him. The driver then put the car in reverse and slammed into the pickup, and then he put the car in drive and again slammed into the detective's vehicle. [Petitioner] was the driver of the blue car. He and his female passenger were arrested. A subsequent search of the car revealed methamphetamine, a controlled substance.

*State v. Skunkcap*, 335 P.3d 561, 563-64 (Idaho 2014).

Petitioner was convicted by a jury, in two separate cases, with the theft of the two saddles[2] and with felony attempting to elude a police officer.[3] Pursuant to Petitioner's persistent violator status, Petitioner was ultimately sentenced to two consecutive terms of 18 years in prison with 8 years fixed.[4] Petitioner's convictions were affirmed on appeal.

(State's Lodging B-15.)

---

[2]      Petitioner's first trial on the theft case resulted in a mistrial when Petitioner's counsel became ill. The case proceeded to a second trial, which resulted in the guilty verdict. (State's Lodging A-6 at 200-03.)

[3]      Petitioner was also charged with other crimes. Petitioner was acquitted of some charges, and his other convictions were misdemeanors for which Petitioner had already served his sentence before he filed his federal Petition. (State's Lodging B-15 at 5; *see also* Dkt. 17.)

[4]      As the Court explained in its November 10, 2015 Memorandum Decision and Order, these sentences were imposed following Petitioner's successful motions (1) to withdraw a guilty plea to the persistent violator enhancement and (2) for reduction of sentence under Idaho Criminal Rule 35. (*See* Dkt. 17 at 3-4.)

**MEMORANDUM DECISION AND ORDER - 4**

Petitioner filed the instant habeas petition in December 2014. On November 10, 2015, this Court granted Respondent's motion for partial summary dismissal. The Court dismissed Claims 1 and 2(b) for lack of jurisdiction and dismissed Claim 4 as procedurally defaulted. (Dkt. 17.) Further, Petitioner has stipulated that he is not entitled to habeas relief on Claim 3. (Dkt. 21 at 5.) Therefore, the following claims remain for adjudication on the merits:

> Claim 2(a): That the trial court erred, in the eluding case, by instructing the jury in a manner that allegedly "relieved the State of its constitutional burden of proof."

> Claim 5: That, in the theft case, the prosecutor committed misconduct in violation of the Due Process Clause and the Fifth Amendment's guarantee against compelled self-incrimination by "intentionally eliciting testimony from a police officer regarding [Petitioner's] decision to exercise his right to remain silent."

(Pet. Dkt. 3, at 2-6; *see* Dkt. 17 at 4-5.)

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances where the state court's adjudication of the petitioner's claim

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

**MEMORANDUM DECISION AND ORDER - 5**

> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an
>         unreasonable determination of the facts in light
>         of the evidence presented in the State court
>         proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned

decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501

U.S. 797, 804 (1991).

When a party contests the state court's legal conclusions, including application of

the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests:

the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established

federal law "if the state court applies a rule different from the governing law set forth in

[the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694

(2002). Stated more simply, "Section 2254(d) applies regardless of the procedures

employed or the decision reached by the state court, as long as a substantive decision was

reached." *Teti v. Bender*, 507 F.3d 50, 57 (1st Cir. 2007).

Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1) the petitioner must show that the state court—although identifying "the

correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably

applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*,

**MEMORANDUM DECISION AND ORDER - 6**

529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (internal citation omitted). To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (internal quotation marks omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000).

**MEMORANDUM DECISION AND ORDER - 7**

However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

The United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).

When a petitioner contests the reasonableness of the state court's factual determinations, the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). If the factual findings of the state court are not unreasonable, those findings must be presumed correct, and may be rebutted only by clear and convincing evidence, pursuant to 28 U.S.C. § 2254(e)(1). *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

Even if a petitioner succeeds in demonstrating a constitutional error in his conviction, he is entitled to federal habeas relief only if the petitioner "can establish that

**MEMORANDUM DECISION AND ORDER - 8**

[the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). A "reasonable possibility" of prejudice is insufficient. *Id.* Under the *Brecht* standard, an error is not harmless, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U. S. 432, 436 (1995) (internal quotation marks omitted).

## DISCUSSION

**1.    Claim 2(a): Jury Instruction in the Eluding Case**

In Claim 2(a), Petitioner challenges the jury instruction setting forth the elements eluding an officer. The statute governing the crime of eluding an officer makes it a crime for "[a]ny driver of a motor vehicle who willfully flees or attempts to elude a pursuing police vehicle when given a visual or audible signal [including a signal by emergency lights or siren] to bring the vehicle to a stop." Idaho Code § 49-1404(1). The statute also states, "It is sufficient proof that a reasonable person knew or should have known that the visual or audible signal given by a peace officer was intended to bring the pursued vehicle to a stop." *Id.* The crime is a felony if, in the course of eluding the officer, the driver reaches speeds in excess of 30 miles per hour above the speed limit, causes property damage or bodily injury, or drives in a dangerous manner. *Id.* § 49-1404(2).

The eluding instruction given to Petitioner's jury provided as follows:

> In order for the defendant to be guilty of Fleeing or
> Attempting to Elude a Police Officer, the State must prove
> each of the following:
>
>      1.      On or about the 14th day of November, 2006

**MEMORANDUM DECISION AND ORDER - 9**

2.      In the county of Bannock, State of Idaho;

3.      Defendant JAMES LEROY SKUNKCAP, the
        driver of;

4.      a Motor Vehicle; to wit: a blue Toyota Camry
        bearing Idaho license 1BF9120, in the Kraft Rd.
        and Main St. area;

5.      Did willfully flee or attempt to elude a pursuing
        police vehicle;

6.      when given a visual or audible signal to bring
        the vehicle to a stop; and

7.      while doing so, causes damage to the property
        of another or bodily injury to another.

** *It is sufficient proof that a reasonable person who knew or
should have known that the visual or audible signal given by
a peace officer was intended to bring pursued vehicle to a
stop.*

If each of the above has been proven beyond a
reasonable doubt, you must find the defendant guilty. If any
of the above has not been proven beyond a reasonable doubt,
you must find the defendant not guilty.

(State's Lodging A-2 at 245 (italics in original).)

The italicized language pertains to the "signal" element of the crime; that is, the

visual or audible signal given by the police "must be given by emergency lights or siren

which a reasonable person knew or should have known was intended to bring the pursued

vehicle to a stop." *Skunkcap*, 335 P.3d at 568 n.1 (quoting the recommended Idaho

Criminal Jury Instruction for attempting to elude a police officer). However, in the

instruction given in Petitioner's case, the italicized language was listed after all of the

elements of the crime and was not isolated to the "signal" element.

**MEMORANDUM DECISION AND ORDER - 10**

Petitioner claims that the italicized language in the instruction unconstitutionally relieved the prosecution of its burden of proof, presumably because its placement in the instruction "could have led the jury to find him guilty without consideration of the other elements of the crime listed above it." *Skunkcap*, 335 P.3d at 567. Petitioner specifically argues that the italicized language "would lead a juror to believe that [elements] 5. and 6. of the jury instruction"—willful flight and failing to stop at an official signal—were "already a proven fact." (Dkt. 21 at 3.)

### A.     *Clearly-Established Law*

Because Petitioner challenges a jury instruction that quotes a state statute, his burden to show constitutional error in the eluding instruction is "especially heavy." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Id*. (quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)). To succeed on his due process claim that the eluding instruction was unconstitutional, Petitioner "must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id*. at 190-91 (internal quotation marks omitted).

In determining whether a jury instruction violated due process, a federal habeas court may not judge the jury instruction "in artificial isolation," but rather must consider the instruction "in the context of the instructions as a whole and the trial record." *Id.* at 191 (internal quotation marks omitted). Therefore, the Court cannot grant habeas relief on

**MEMORANDUM DECISION AND ORDER - 11**

Petitioner's Claim 2(b) unless every fairminded jurist would necessarily conclude that

"the ailing instruction by itself so infected the entire trial that the resulting conviction

violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation

marks omitted); *see also Richter*, 562 U.S. at 101 ("A state court's determination that a

claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision.") (quoting *Yarborough v.*

*Alvarado,* 541 U.S. 652, 664 (2004).)

      **B.**    ***State Court Decision***

      Although the Idaho Supreme Court noted that "the way that the instruction was

drafted" in Petitioner's case was not recommended, the court rejected Petitioner's

challenge because Petitioner failed to establish that "a reasonable juror would have

interpreted" the instruction incorrectly. The court concluded:

> In context, the sentence beginning with the words "It is
> sufficient proof" would not reasonably have been construed
> to mean that a jury could convict solely upon that sentence.
> The instruction begins by stating that "the State must prove
> *each* of the following." (Emphasis added.) Immediately
> below the sentence at issue, the instruction states: "If *each* of
> the above has been proven beyond a reasonable doubt, you
> must find the defendant guilty. If *any* of the above has not
> been proven beyond a reasonable doubt, you must find the
> defendant not guilty." (Emphasis added.) Each and any of the
> above would include the challenged sentence. In context, it is
> also clear that the challenged sentence referred to the "visual
> or audible signal to bring the vehicle to a stop."

*Skunkcap*, 335 P.3d at 568. Thus, the court was "not persuaded that the instruction misled

the jury as to the elements of the crime that the State was required to prove beyond a

reasonable doubt." *Id*.

**MEMORANDUM DECISION AND ORDER - 12**

### C.    Petitioner Is Not Entitled to Relief on Claim 2(a)

This Court agrees with the Idaho Supreme Court that the eluding instruction was not drafted in the most precise manner. Had the italicized language been placed within the description of the "signal" element, it would have been much clearer that the language about a reasonable person knowing that the signal was intended to stop the vehicle was not sufficient, by itself, to satisfy all of the elements of the crime.

However, the Idaho Supreme Court went on to determine that Petitioner had not shown a reasonable likelihood that that the jury applied the eluding instruction in a manner that relieved the state of its burden of proof, and that determination was neither contrary to, nor an unreasonable application of, the clearly-established Supreme Court precedent as found in *Waddington v. Sarausad*, *Middleton v. McNeil*, and *Estelle v. McGuire*. *See* 28 U.S.C. § 2254(d). The potential ambiguity in the instruction is insufficient to render the state court's conclusion unreasonable. Nor was the Idaho Supreme Court's decision based on an unreasonable finding of fact. Therefore, Petitioner is not entitled to relief on Claim 2(a).

**2.    Claim 5: Prosecutorial Misconduct as to a Police Officer's Testimony, in the Theft Case, about Petitioner's Choice to Remain Silent**

Claim 5 asserts that the prosecutor committed misconduct, in the theft case, by eliciting testimony from Detective Ian Nelson, during the state's case-in-chief, regarding Petitioner's decision not to speak to police after his arrest:

[The prosecutor]:    Okay. And what did you do next?

**MEMORANDUM DECISION AND ORDER - 13**

[The witness]:          Detective Thomas and I were charged
                        with trying to interview . . . [Petitioner]
                        and his girlfriend[5], Miss Edmo.

Q.                      Regarding what?

A.                      Regarding the incident that had occurred
                        over on Kraft Road.

Q.                      Okay. And did you interview the
                        defendant?

A.                      No, I did not.

Q.                      Did you attempt to?

A.                      Yes.

Q.                      Where did you attempt to interview the
                        defendant at?

A.                      At the Pocatello Police Department.

. . .

Q.                      And what did you say to him?

A.                      I just advised him that we would like to
                        talk with him about the incident that had
                        taken place. That was about all I got out.

Q.                      And that person that you interviewed
                        was [Petitioner]—or attempted to
                        interview?

A.                      Yes.

. . .

Q.                      Okay. And how did you attempt to begin
                        the interview?

---

5       During the trial on the eluding charge, Petitioner testified that Miss Edmo was not his girlfriend;
rather, she is his cousin. (States' Lodging A-5 at 419.)

**MEMORANDUM DECISION AND ORDER - 14**

A.          Exactly as I explained. I told him that we would like to talk with him about the incident that had occurred.

Q.          Okay. And what was his response?

A.          He pretty much started cussing at myself and Detective Thomas. . . .

Q.          Do you recall any specifics as to what he said?

A.          I can't quote him exactly. It was something along the lines of—"I'm not fucking talking to you guys."

Q.          Okay. And then you mentioned you spoke with Barbara Edmo also?

A.          Attempted to.

Q.          Was that on the same day?

A.          Yes, it was just before [Petitioner's interview].

Q.          And what was the result of that?

A.          I advised her of her Miranda warning and she invoked her rights.

Q.          Did the defendant invoke his rights?

A.          More or less. I didn't get to Mirandize him.

Q.          You never got a chance to read the Miranda warning?

A.          No, sir.

Q.          Okay. And at any point were you able to interview the defendant?

A.          No.

**MEMORANDUM DECISION AND ORDER - 15**

| | |
|---|---|
| Q. | Okay. And how about Miss Edmo? |
| A. | Yes, I was. |
| Q. | And . . . when did that interview take place? |
| A. | I interviewed her regarding a different incident later that evening at the Bannock County Sheriff's Office in the booking area. |
| Q. | What incident was that? |
| A. | It was the theft of the saddle from Vickers Western Wear. |
| Q. | Okay. And was she willing to talk to you? |
| A. | Yes, sir. |
| Q. | What was her response? |

(State's Lodging A-6 at 405-09.)

At this point, the trial judge stopped the prosecutor's questioning and stated to the jury, "Ladies and gentlemen, people have the right if they want to not to talk with the police, and so I don't want you to hold it against [Petitioner] that he wouldn't give a statement." (*Id*. at 409.)

The prosecutor later returned to a similar line of questioning:

| | |
|---|---|
| Q. | Okay. And as to any further investigation involving the defendant, you indicated before that you had attempted to interview him on November 14th of 2006; did you ever attempt to interview him again? |
| A. | Yes, I did. |

**MEMORANDUM DECISION AND ORDER - 16**

Q.          And when did you do that?

A.          November 15th.

Q.          And where did you try to do that at?

A.          Bannock County Jail booking area.

Q.          Okay. And did you have contact with
            him on that day?

A.          Yes, I did.

Q.          What was the nature of that contact?

A.          I wanted to advise him that he was going
            to be charged with Grand Theft for the
            saddles at Vickers.

Q.          Okay. And did you advise him of that?

A.          Yes, I did.

Q.          And what was his response?

A.          . . . [H]is response was something along
            the lines of, "Keep stacking on the
            fucking charges. We both know that
            they're going to reduce them all to one
            misdemeanor."

            He then instructed me to get the fuck out
            of his cell.

(State's Lodging A-6 at 427-28.) Petitioner did not object to either line of questioning.

    *A.*    ***Clearly-Established Law***

Because Claim 5 asserts prosecutorial misconduct based on testimony about

Petitioner's refusal to speak to police, the claim implicates both the Fifth Amendment

right to remain silent and the Fourteenth Amendment right to due process.

**MEMORANDUM DECISION AND ORDER - 17**

The Fifth Amendment guarantees the right to be free from compelled self-incrimination. This right encompasses not only the right to refrain from testifying against oneself, but—in many circumstances—it also "forbids . . . comment by the prosecution on the accused's silence." *Griffin v. California*, 380 U.S. 609, 616 (1965). In considering whether a prosecutor's comments on a defendant's silence violate the Fifth Amendment, the most important questions are (1) whether the defendant's silence preceded or followed *Miranda* warnings,[6] and (2) whether the prosecutor used that silence (a) as substantive evidence in the prosecution's case-in-chief, or (b) to impeach a testifying defendant.

Once *Miranda* warnings have been given to a suspect, that suspect's later silence cannot be used by the prosecution at all, either as substantive evidence of guilt or as impeachment. *Doyle v. Ohio*, 426 U.S. 610, 611 (1976) (holding that either of these uses of post-arrest, post-*Miranda* silence violates the right to be free from compelled self-incrimination). The Fifth Amendment is not violated, however, when a prosecutor *impeaches* a testifying defendant by referencing post-arrest, pre-*Miranda* silence—a refusal to speak to police without having previously been given *Miranda* warnings. *Fletcher v. Weir*, 455 U.S. 603, 605 (1982) (per curiam) (holding that prosecutor's reference, during cross-examination of testifying defendant, to defendant's post-arrest, pre-*Miranda* silence was constitutional); *see also Wainwright v. Greenfield*, 474 U.S.

---

[6]     *See Miranda v. Arizona*, 384 U.S. 436, 445 (1966) (holding that suspects in custody must be informed, prior to interrogation, that they have a Fifth Amendment right to remain silent and to have an attorney present during police questioning).

**MEMORANDUM DECISION AND ORDER - 18**

284, 291 n.6 (1986) ("[D]ue process is not violated by the impeachment use of pre-*Miranda* warnings silence, either before arrest or after arrest . . . ." (internal citations omitted)).

In certain circumstances, a prosecutor's mere *attempt* to elicit testimony regarding a defendant's silence may deprive a defendant of due process, even if there is no underlying Fifth Amendment violation. *Greer v. Miller*, 483 U.S. 756, 765 (1987). In *Greer*, the prosecutor asked an improper question regarding a defendant's silence, but the trial court sustained the defendant's objection and advised the jury to disregard any questions to which objections were sustained. The Supreme Court recognized that "[a]lthough the prosecutor's question did not constitute a *Doyle* violation, the fact remains that the prosecutor attempted to violate the rule of *Doyle* by asking an improper question in the presence of the jury"; the Court then analyzed whether the prosecutor's misconduct violated due process and determined that it did not. *Id*.

However, to constitute a due process violation, the prosecutor's misconduct must be egregious; an "ordinary trial error of a prosecutor" does not suffice. *Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974). Further, although a prosecutor has a "duty to refrain from improper methods calculated to produce a wrongful conviction," *Berger v. United States*, 295 U.S. 78, 88 (1935), such methods will warrant habeas relief only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process,'" *Darden v. Wainwright*, 477 U.S. 168, 180 (quoting *Donnelly*, 416 U.S. at 643).

**MEMORANDUM DECISION AND ORDER - 19**

A court must consider the record as a whole when considering whether prosecutorial misconduct resulted in a due process violation. *See United States v. Young*, 470 U.S. 1, 16-17 (1985) ("Viewed in context, the prosecutor's statements, although inappropriate and amounting to error, were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice."). When reviewing prosecutorial misconduct claims under the "unreasonable application" prong of § 2254(d)(1), federal courts must keep in mind that this standard is a "very general one" that affords courts "leeway in reaching outcomes in case-by-case determinations." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam) (internal quotation marks and alterations omitted).

### B.   State Court Decision

The Idaho Supreme Court held that the prosecutor committed misconduct in questioning Detective Nelson about Petitioner's refusal to speak to police, stating that "[t]here is simply no excuse for [the prosecutor's] conduct in this case." *Skunkcap*, 335 P.3d at 574. The court found that the prosecutor's "sole purpose" in eliciting the testimony "was to seek to have the jury infer that [Petitioner] must be guilty because he would not talk after he was arrested." *Id.* at 573. In eliciting testimony that Petitioner refused to speak with police, but that Petitioner's "female companion was willing to talk about the theft of the saddles, . . . the deputy prosecutor was obviously attempting to [imply to the jury] that she was willing to talk because she was innocent, but [Petitioner] was unwilling to talk because he was guilty." *Skunkcap*, 335 P.3d at 574. The prosecutor's questions "also let the jury know that [Petitioner] was in jail on some other

**MEMORANDUM DECISION AND ORDER - 20**

charge, because Detective Nelson went to [Petitioner's] jail cell to tell him that he would be charged with the theft of the saddles." *Id*. According to the Idaho Supreme Court, the prosecutor's conduct constituted "a blatant violation of his duty as a prosecutor and of [Petitioner's] constitutional rights." *Id*.

Nonetheless, the court held that Petitioner was not prejudiced by the prosecutor's questions or by the testimony elicited by those questions, citing the following evidence of Petitioner's guilt:

> The store employee who was going home was an eyewitness to the theft. Although she did not initially identify [Petitioner] from a photo lineup, she testified that she immediately recognized him when she first saw him in person in a hallway in the courthouse. She also identified him during the trial. At about 1:15 p.m., she saw [Petitioner] putting a saddle into the trunk of the blue car, and she wrote down the license number of the car. Later that day at 4:30 p.m., [Petitioner] arrived at a friend's house in a blue car. While there, [Petitioner] opened the trunk of the car to get a beer, and the friend testified that he saw a saddle in the trunk and that it looked like there was "a hump ... something was under it." The friend testified that [Petitioner] asked him if he would help [Petitioner] "get rid of them." The next day, [Petitioner] was found driving the blue car with the same license plates as recorded by the store employee who saw him stealing the saddle.

*Id*. at 575. Considering all of this evidence, the Idaho Supreme Court was "not persuaded that there is a reasonable likelihood that the deputy prosecutor's misconduct affected the jury's verdict." *Id*.

## C.     *Petitioner Is Not Entitled to Relief on Claim 5*

Here, Petitioner's refusal to speak to police occurred before he received *Miranda* warnings, and the prosecutor elicited testimony of Petitioner's silence during his case-in-

**MEMORANDUM DECISION AND ORDER - 21**

chief.[7] Thus, this case involves a prosecutor who intended to introduce substantive evidence of a defendant's guilt—not simply to use that silence as impeachment—by referring to a defendant's post-arrest, pre-*Miranda* silence. Though the U.S. Supreme Court appears not to have explicitly addressed this precise issue, the prosecutor's questioning of Detective Nelson would have been prohibited under Ninth Circuit precedent. *See United States v. Velarde-Gomez*, 269 F.3d 1023, 1030-33 (9th Cir. 2001) (holding that, although a prosecutor may impeach a defendant with post-arrest, pre-*Miranda* silence, the prosecutor may *not* use evidence of such silence during the state's case-in-chief).[8]

Respondent argues that, contrary to the state court's decision, the prosecutor did not commit misconduct or violate the Fifth Amendment by inquiring as to Petitioner's silence during its case-in-chief. Respondent asserts the Idaho Supreme Court applied a broader standard than that required by the Due Process Clause. (Dkt. 18 at 23.) *Compare State v. Moore*, 965 P.2d 174, 180 (Idaho 1998) ("[D]efendants' Fifth Amendment right not to have their silence used against them in a court proceeding is applicable pre-arrest and pre-*Miranda* warnings. The constitutional right is always present." (emphasis added)), *with Salinas v. Texas*, 133 S. Ct. 2174, 2180 (2013) (holding that the Fifth Amendment does not prohibit a prosecutor from using a defendant's pre-arrest, pre-

---

[7]     Though it is not entirely clear whether Petitioner had already been arrested by the time he was first interviewed by Detective Nelson, the Court will assume Petitioner was in custody during both attempted interviews.

[8]     As explained above, because this case is governed by AEDPA, the Court may look only to the holdings of the United States Supreme Court, not the Ninth Circuit, when reviewing the state court's decision. *See* 28 U.S.C. § 2254(d)(1).

**MEMORANDUM DECISION AND ORDER - 22**

*Miranda* silence, either as substantive evidence of guilt or as impeachment of a testifying defendant) (emphasis added).

However, the Court need not address whether the Due Process Clause or the Fifth Amendment were violated in Petitioner's case because—even assuming that the prosecutor committed misconduct and that the testimony regarding Petitioner's silence violated the Fifth Amendment—this Court agrees with the Idaho Supreme Court that any constitutional error was not prejudicial. *See Brecht*, 507 U.S. at 637.

Even absent Detective Nelson's testimony about Petitioner's silence, the evidence of Petitioner's guilt—which included the testimony of an eyewitness who watched the crime and took down the license plate of the car used in the theft—was overwhelming. Petitioner attempts to challenge the circumstances under which the store employee eyewitness identified Petitioner as the man who took the saddles. The witness identified Petitioner "in the hallway at the courthouse," where Petitioner was in restraints, "with white police holding his arms and other white people around, and [Petitioner was] the only Indian there." (Dkt. 21 at 11.) However, Petitioner's habeas petition does not include a claim that the witness identification was unduly suggestive. Therefore, the identification cannot be challenged.

The store employee testified at trial she was "one hundred percent sure" that Petitioner was the man she saw loading the saddle into the trunk of the light blue car. (State's Lodging A-6 at 270.) This eyewitness testimony, combined with (1) the testimony of Petitioner's friend, who saw a saddle in the trunk of the car, and (2) the fact

**MEMORANDUM DECISION AND ORDER - 23**

that Petitioner was arrested in a light blue car with the same license plates as the car used to steal the saddles, establishes that Petitioner did not suffer "actual prejudice" from any constitutional error in the prosecutor's questioning or the resulting testimony regarding Petitioner's refusal to speak to police. *Brecht*, 507 U.S. at 637. The Court is not persuaded that the prosecutor's conduct or the challenged testimony had a "substantial and injurious effect or influence in determining the jury's verdict." *Id*. at 623 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)).

## CONCLUSION

The Idaho Supreme Court's rejection of Claim 2(a) was reasonable. Further, as to Claim 5, this Court need not consider whether there was constitutional error with respect to the prosecutor's conduct and Detective Nelson's testimony about Petitioner's pre-*Miranda* silence, because Petitioner suffered no prejudice from any such error. Finally, because Petitioner has stipulated as to the denial of Claim 3, and because all other claims have previously been dismissed, the Court will deny the Petition with prejudice.

## ORDER

**IT IS ORDERED:**

1.   Petitioner's Motion for Extension of Time (Dkt. 20) is GRANTED.

2.   The Petition for Writ of Habeas Corpus (Dkt. 3) is DENIED, and this entire action is DISMISSED with prejudice.

3.   The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

**MEMORANDUM DECISION AND ORDER - 24**

§ 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If

Petitioner wishes to appeal, he must file a timely notice of appeal with the

Clerk of Court. Petitioner may seek a certificate of appealability from the

Ninth Circuit by filing a request in that court.



DATED:  **September 30, 2016**

_____
Honorable Ronald E. Bush
United States Magistrate Judge